IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ERNEST DWIGHT LINDSEY,

                                 :

    Plaintiff,

                                 :

vs.                          CIVIL ACTION 12-0053-CG-M

                                 :

STATE OF ALABAMA, et al.,

                                 :

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, proceeding pro se, filed a Complaint and an Amended Complaint under 42 U.S.C. § 1983 and § 1985 (Doc. 7). Defendants filed a Motion to Dismiss Plaintiff's action in its entirety (Doc. 8).  This action has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  After consideration of the pleadings, and for the reasons set forth below, it is recommended that this action be dismissed for failure to state a claim upon which relief may be granted.

## I.  SUMMARY OF FACTUAL ALLEGATIONS

1.  On or about July 8, 2010 there was a car accident in front of Plaintiff's home, and he went outside of his house to help the individuals involved in the accident by bringing them medical supplies (Doc. 7, p. 3).  One vehicle began to burn at

which time Plaintiff retrieved a fire extinguisher and
extinguished the fire (Doc. 7, p. 3).

2.    Defendant Trooper Dickie Stevens ("Trooper Stevens")
arrived at the scene of the accident, and asked Plaintiff if he
had been part of the accident and Plaintiff responded, "[n]o, I
live here." (Doc. 7, p. 3).  Trooper Stevens responded, "[t]hen
get in your house", but Plaintiff did not go back inside his
house and stood with bystanders (Doc. 7, p. 3).

3.    Trooper Stevens proceeded to tell Plaintiff a second
time to get back in his house, but Plaintiff replied, "[t]his is
my property and I have a right to be here." (Doc. 7, p. 3).
Trooper Stevens warned Plaintiff to get back in his house or be
arrested (Doc. 7, p. 3).  Plaintiff then stated "[t]hen you will
have to arrest me because the fourth amendment gives me the
right to be here." (Doc. 7, p. 4).

4.    Trooper Stevens again told Plaintiff to get in his
house or risk arrest, but Plaintiff then responded, "[t]hen you
will have to arrest me." (Doc. 7, p. 4).

5.    Plaintiff then turned around and Trooper Stevens
proceeded to handcuff Plaintiff (Doc. 7, p. 4).

6.    Plaintiff was left in the back seat of the squad car
parked on the street pavement in direct sunlight and heat with
the windows up and the partition between the front and back

2

seats closed, and Plaintiff claims he suffered from heat exhaustion and dehydration (Doc. 7, pp. 9-11).

7.     Later Plaintiff asked Trooper Stevens why he had been arrested, and Trooper Stevens told Plaintiff that he had failed to obey a police officer (Doc. 7, p. 4).  Plaintiff responded that the order had to be "lawful" (Doc. 7, p. 4).

8.     Plaintiff was charged with obstructing a government operation by the State of Alabama, but was not sentenced to any "time in jail, fine, court cost" and "no[] other sentence was imposed" by the Circuit Court of Mobile County, Alabama (Doc. 7, p. 10; *State of Alabama v. Ernest Dwight Lindsey*, cc-2010-014312, Case Action Summary and Conviction Report).[1]

9.     Subsequently, upon motion of the State of Alabama, the charge was "nolle-prossed" (Doc. 7, p. 9; *State of Alabama v. Ernest Dwight Lindsey*, cc-2010-014312, Order April 18, 2011).

## II. SUMMARY OF THE PROCEDURAL ASPECTS OF THE CASE

1.     Plaintiff originally filed his action in the Circuit Court of Mobile County, Alabama and Defendants Dickie Stevens, Thomas Averette, and the State of Alabama removed the case from

---

[1] In *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999), the Eleventh Circuit Court of Appeals held that a U.S. District Court "was authorized at the motion to dismiss stage to take judicial notice of relevant public documents." This Court has taken judicial notice of the documents in the Circuit Court of Mobile County, Alabama Alacourt system.

the Circuit Court of Mobile County, Alabama to this Court (*see* Doc. 1).

    2.    After the removal, Plaintiff filed an Amended Complaint pursuant to 42 U.S.C. §§ 1983, 1985 claiming that Defendants violated his constitutional rights (Doc. 7, p. 2).

    3.    Plaintiff claims that Trooper Stevens unlawfully arrested him; unlawfully imprisoned him by booking him and placing him in the back of his car without probable cause, consent or justification; and maliciously prosecuted him without probable cause (Doc. 7, p. 10)[2].

    4.    In addition, Plaintiff claims that State Trooper Corporal Thomas Averette ("Corporal Averette") negligently supported the actions of Trooper Stevens (Doc. 7, pp. 5-10).

    5.    Finally, Plaintiff claims that the State of Alabama was negligent in its duty to train its agents and in its support of Trooper Stevens' actions (Doc. 7, pp. 6-11)

---

[2] Plaintiff also claims he was unjustly convicted of a guilty sentence without serving jail time or having to pay a fine or court costs (Doc. 7, p. 10). The only proper claim that this Court could construe Plaintiff's claim to be is that of unjust conviction under 28 U.S.C. § 1495. However, to claim damages under § 1495 for an unjust conviction a plaintiff must have a federal conviction. 28 U.S.C. § 1495. Plaintiff's charges are state charges and Plaintiff was never imprisoned. Therefore, Plaintiff's unjust conviction claim is not a proper claim as a matter of law and is due to be dismissed.

6.    Plaintiff also states that his rights under the Alabama Constitution have been violated by Defendants' actions (Doc. 7, pp. 11-12).

7.    Plaintiff requests $50,001.00 for heat exhaustion, dehydration, damage to reputation, embarrassment, plus legal fees and cost, that his arrest record be expunged, and that all "his fingerprints and mug shot along with any and all other information illegally obtained to be expunged" (Doc. 7, pp. 11-12).

8.    Defendants State of Alabama, Trooper Stevens, and Corporal Averette filed their Motion to Dismiss and Brief in Support of the Motion to Dismiss denying the allegations made against them by the Plaintiff and asserting various defenses (Docs. 8, 9).

9.    On June 18, 2012 Plaintiff filed his Response to the Motion to Dismiss (Doc. 22).[3]

### III. MOTION TO DISMISS STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the

---

[3] The Court notes that the Response was filed beyond the due date, but the Court will consider it in light of the fact that Plaintiff obtained counsel (*see* Doc. 16), counsel requested an extension of time (*see* Doc. 17) which was granted (*see* Doc. 18), and then counsel moved to withdraw from this case. Counsel's Motion to Withdraw (Doc. 19) was granted (*see* Doc. 23). Plaintiff, now *pro se*, filed his Response (Doc. 22).

basis that the plaintiff has failed to state a claim upon which relief may be granted. Such a motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true, *see, e.g., United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990), and all factual allegations, moreover, are to be construed in the light most favorable to the plaintiff, *see, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989); *see also Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (same).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'  As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.").  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

6

cause of action will not do.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Id.* at 678-79 (internal citations and quotation marks omitted); *see also id.* at 680 (a plaintiff must nudge his claims "across the line from conceivable to plausible."); *see Speaker*, 623 F.3d at 1381 ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion.  Rather, his allegations must proffer enough factual content to 'raise a right to relief above the speculative level.'").  Additionally, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998)(citation omitted).

IV. DISCUSSION

A. Defendant State of Alabama

In his Amended Complaint, Plaintiff claims that the State of Alabama was negligent in its duty to train its agents and in its support of Trooper Stevens' actions which violated his rights under §§ 1983 and 1985.  Both of these claims fail.  First, § 1985 is a federal cause of action for recovery when there is a conspiracy to deprive one of civil rights. 42 U.S.C. § 1985.  Plaintiff does not allege any facts establishing a conspiracy by the State of Alabama in this action, and therefore, this claim is due to be dismissed.  Second, it is well established that § 1983 does not apply to states, but

8

rather to persons. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Additionally, "[a]lthough the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens." *Thomas v. Buckner*, 2011 WL 4071948, *6 (M.D. Ala. Sept. 13, 2011)(unreported) (citation and quotation omitted)). Thus, Defendant State of Alabama is due to be dismissed from this action.

   B. Defendant Corporal Averette

   As discussed above in regard to the State of Alabama, Plaintiff fails to state any facts to support his § 1985 claim. This claim against Defendant Corporal Averette likewise fails because Plaintiff does not allege any facts establishing a conspiracy by Corporal Averette.  Therefore, this claim is due to be dismissed.  Moreover, all the claims made under § 1983 against Corporal Averette are due to be dismissed from this action because they are premised on a theory of respondeat superior.

   Plaintiff's only allegations against Corporal Averette are for his support of Trooper Steven's actions in regards to Plaintiff.  "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the

9

unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations omitted).

> Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Gonzalez*, 325 F.3d at __, 2003 WL 1481583, at *5; *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).  The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez*, 325 F.3d at__, 2003 WL 1481583, at *5 (quoting *Braddy v. Fla. Dept. of Labor & Employment*, 133 F.3d 797, 802 (11th Cir. 1998)); Brown, 906 F.2d at 671.  Alternatively, the causal connection may be established when a supervisor's "'custom or policy . . . result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at __, 2003 WL 1481583, at *5 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)); *Hartley*, 193 F.3d at 1263; *see also Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1560-61 (11th Cir. 1993).  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, 325 F.3d at __, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

*Cottone*, 326 F.3d 1352, 1360-61; *see also Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).  For the foregoing reasons, Plaintiff's § 1983 and § 1985 claims against Defendant Corporal Averette are due to be dismissed.

10

C. Defendant Trooper Stevens

As explained above, Plaintiff's § 1985 claim fails because he did not set forth any facts that Defendant Trooper Stevens was part of a conspiracy.  Therefore, this claim is due to be dismissed. The Court now addresses the remaining §1983 claims against Defendant Trooper Stevens.

1.  Unlawful Arrest

The Eleventh Circuit states that "probable cause constitutes an absolute bar to both state and [federal] § 1983 claims alleging false arrest." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).  Moreover, **Plaintiff has "the burden** of demonstrating the absence of probable cause in order to succeed in ... [a] § 1983 claim." *Id*. at 1436 (citation omitted)(emphasis added).  Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995).  "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003). "The probable-cause standard rests on 'a practical, nontechnical conception affording the best

11

compromise that has been found for accommodating' the 'often opposing' interests of law enforcement and individual liberty." *United States v. Montoya de Hernandez*, 473 U.S. 531, 566, 105 S.Ct. 3304, 87 L.Ed.2d 381 *1334 (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (Jackson, J., dissenting)). "Probable cause is 'judged not with clinical detachment but with a common sense view to the realities of normal life.'" *Rank v. Evans*, 133 F.3d 1325, 1435-36 (11th Cir. 1998) (quoting *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990)). "[O]nly the probability, not a prima facie showing, of criminal activity is the standard of probable cause." *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (internal quotation marks and citation omitted) (alteration added). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) (citation and internal quotation marks omitted) (alterations in original). "Simply put, ... probable cause exists whenever an officer reasonably believes that an offense is being committed." *Id*. at 1090.

"Absent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed." *Case v.

*Eslinger*, 555 F.3d 1317, 1326–27 (11th Cir. 2009) "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" *Grider v. City of Auburn, Ala*., 618 F.3d 1240, 1256–57 (11th Cir. 2010). "Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that actual probable cause is present, and in such cases those officials should not be held personally liable." *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990) (internal citations, quotation marks, and ellipses omitted). Accordingly, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause existed are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (citation and internal quotation marks omitted).

The offense in question is whether Plaintiff disobeyed or was about to disobey a lawful order of Defendant Trooper Stevens prior to, at the time, or imminent to his arrest.  Plaintiff violated at least one law, if not two laws, related to Trooper Stevens' requests after the car accident and subsequent fire (*see* Doc. 9). Ala. Code §13A-10-6 is entitled "Refusing to assist in fire control" and states as follows:

13

(a) A person commits the crime of refusing to assist in fire control if, upon command by a fireman or peace officer identified to him as such, he intentionally disobeys a reasonable order or regulation made in relation to the conduct of persons in the vicinity of a fire.
(b) Refusing to assist in fire control is a Class C misdemeanor.

Ala. Code §13A-10-6 (1975). Ala. Code §13A-10-2 is entitled

"Obstructing governmental operations" and states as follows:

(a) A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he:
  (1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or
  (2) Intentionally prevents a public servant from performing a governmental function.
(b) This section does not apply to the obstruction, impairment or hindrance of the making of an arrest.
(c) Obstructing governmental operations is a Class A misdemeanor.

Ala. Code §13A-10-2 (1975). Defendant Trooper Stevens arrived

at the scene where two vehicles had been in an accident; a fire

had occurred; and bystanders were gathering around the accident

scene (*see* Doc. 7, p. 3). Plaintiff refused to get into his

house after multiple orders by Defendant Trooper Stevens and

instead stood with other bystanders in the crowd gathering at

the scene of the accident (Doc. 7, pp. 3-4).[4] Even after being

---

[4] The Court notes that the record does not make clear or set out who the bystanders were at the scene of the accident. For example, the bystanders could have been the vehicle passengers, emergency responders, firefighters, other officers or neighbors.

warned that he would be arrested, Plaintiff continued to refuse to comply with the Trooper Stevens' requests (Doc. 7, pp. 3-4). The order made by Defendant Trooper Stevens was reasonable in light of the need for safety and crowd control around the accident as part of his duties in governmental operations, even if the fire had already been extinguished by Plaintiff (*see* Docs. 7, 9). Moreover, even if the fire had been extinguished prior to Trooper Stevens' arrival on the scene, as a peace officer Trooper Stevens was charged with the responsibility of dealing with the aftermath and any related hazards resulting from the fire. Plaintiff intentionally refused to comply with Trooper Stevens' reasonable orders during this governmental operation (Doc. 7). In light of the facts set forth by Plaintiff, the Court finds that Defendant Trooper Stevens had probable cause to arrest Plaintiff for obstructing a governmental operation. Further, even if this Court was to find probable cause did not exist, then at the very least this Court would find that Trooper Stevens had sufficient "arguable probable cause" to entitle him to qualified immunity from suit. Therefore, Plaintiff's § 1983 claim for false arrest against Defendant Trooper Stevens is due to be dismissed.

      2.   <u>Malicious Prosecution</u>

To "prevail on a § 1983 malicious prosecution claim, a plaintiff must prove (1) the elements of the common law tort of

malicious prosecution, (2) an unlawful seizure in violation of his Fourth Amendment rights, and (3) that the unlawful seizure was "in relation to the prosecution." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234-35 (11th Cir. 2004). In a § 1983 malicious-prosecution action, plaintiff's injuries "may include those associated with the prosecution," but regardless, they must be caused by the unlawful seizure. *Whiting v. Traylor*, 85 F.3d 581, 586 (11th Cir. 1996).

> When malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state. For purposes of a § 1983 malicious prosecution claim, the constituent elements of the common law tort of malicious prosecution include: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. **Of great importance in the present action, it is well established that "the existence of probable cause defeats a § 1983 malicious prosecution claim."** Grider, 618 F.3d at 1256 (citing Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir.2008)). Similarly, "[t]he existence of probable cause at the time of arrest constitutes an absolute bar to a section 1983 action for false arrest." Case v. Eslinger, 555 F.3d 1317, 1326–27 (11th Cir.2009) (internal quotation marks, citation, and ellipsis omitted) (bracketed alteration in original). **Hence, if probable cause existed for Glover to arrest plaintiff, both of her § 1983 claims against him fail.**

*Tucker v. City of Florence, Alabama*, 765 F.Supp.2d 1320, 1333 (N.D. Ala. 2011) (internal citations, quotation marks, brackets omitted, and emphasis added). Moreover, if the Court were only

16

to find that an officer only had "sufficient 'arguable probably cause'", then even this would "entitle him to qualified immunity with respect" to a plaintiff's malicious prosecution claim. *Id*. at 1335 (citation and quotation omitted).

As explained above, Plaintiff's arrest was lawful because Trooper Stevens had probable cause.  Since "the existence of probable cause defeats a § 1983 malicious prosecution claim," Plaintiff's malicious prosecution claim against Defendant Trooper Stevens is due to be dismissed.  *Id*. at 1333 (quotation omitted).  Moreover, even if Trooper Stevens only had arguable probable cause, which the Court can certainly find at a minimum under the given circumstances, then he would be afforded qualified immunity from the malicious prosecution claim. *Id*. at 1335.  Thus, Plaintiff's claim of malicious prosecution is due to be dismissed.

### 3.   Excessive Force

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). To determine whether the amount of force used was excessive, "a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Id*. (quotation omitted). "The 'reasonableness' of a particular use of force must be

judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). This "standard 'looks to the need for force, the amount of force used, and the injury inflicted.'" *Hamilton v. City of Jackson*, Ala., 261 F. App'x 182, 186 (11th Cir. 2008) (quoting *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997)). Other factors that should be examined "'inclu[de] the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Lee*, 284 F.3d at 1197–98 (quoting *Graham*, 490 U.S. at 396). Qualified immunity applies to an excessive force claim unless every reasonable officer in the arresting officer's position would conclude that the force used was unlawful. *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993). Furthermore, a law enforcement officer's application of *de minimis* force upon an arrestee, without more, will not defeat qualified immunity or support a claim for excessive force in violation of the Fourth Amendment. *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

Among Plaintiff's facts and allegations is the claim that Defendant Trooper Stevens left Plaintiff "in the back seat of the squad car . . . with [the] car parked on the street pavement

18

in direct sunlight and heat with windows up and [the] petition
between the front and back [seats] closed" (Doc. 7, p. 9).
Plaintiff claims that he suffered from heat exhaustion and
dehydration (Doc. 7, p. 11).  The Court construes this claim to
be one of excessive force.  Plaintiff does not state whether the
air conditioning was on in the car, how long he was in the squad
car, and whether he suffered from heat exhaustion and
dehydration as a result of his previous exertions to aid the
accident passengers, extinguish the fire, and standing out in
the heat to watch the scene with the other bystanders in July
weather (*see* Doc. 7, pp. 3-9).

     After consideration of the circumstances at the time of the
arrest, the Court finds that handcuffing and placement of
Plaintiff in the squad car was a reasonable action taken by
Defendant Trooper Stevens.  Moreover, the use of force applied
by Defendant Trooper Stevens, if any, was *de minimis*
particularly since Plaintiff states that he turned around to be
cuffed demonstrating that there was no force in the arrest
process.  While the severity of the crime was minor, Plaintiff
posed a safety threat, if minimal, by adding to the crowd at the
scene of the accident and willfully disobeying an officer at an
accident scene. *See Lee*, 284 F.3d at 1197–98.

     Under the circumstances, Plaintiff's willful disobedience
of an officer's reasonable order to go inside his home after a

fire and car accident, where a crowd of bystanders were
gathering around the accident scene, justified Plaintiff being
arrested and then placed in the squad car at that specific time
and place.  While it is regrettable that Plaintiff may have
suffered from heat exhaustion and/or dehydration, the test is
not what physical damage was suffered, but whether "a reasonable
officer would believe that this level of force is necessary in
the situation at hand." *Lee*, 284 F.3d at 1196.  The Court finds
that Defendant Trooper Stevens did not use excessive force upon
Plaintiff; thus, Plaintiff's claim of excessive force against
Defendant Trooper Stevens is due to be dismissed.

V. CONCLUSION

First, Plaintiff's § 1985 claim against all Defendants is
due to be dismissed since Plaintiff failed to state any facts
that Defendants were part of a conspiracy.  Second, Plaintiff's
claims against the State of Alabama under §1983 are due to be
dismissed since one cannot sue the state under this section.
Third, Plaintiff's claims premised on a theory of respondeat
superior against Defendant Corporal Averette are due to be
dismissed since Corporal Averette has qualified immunity against
such claims.  Fourth, Plaintiff's claims against Trooper Stevens
are due to be dismissed.  Trooper Stevens was acting within his
discretionary authority at the time of the incident and had
probable cause to arrest Plaintiff for obstructing a government

20

operation; therefore, there was no false arrest or malicious

prosecution.  Also, Trooper Stevens did not use excessive force

in arresting Plaintiff.  Thus, all of Plaintiff's claims are due

to be dismissed as a matter of law, and it is recommended that

the Motion to Dismiss be granted.


        MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
           AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
             AND FINDINGS CONCERNING NEED FOR TRANSCRIPT
1.   Objection.  Any party who objects to this recommendation or
anything in it must, within fourteen days of the date of service
of this document, file specific written objections with the
clerk of court.  Failure to do so will bar a de novo
determination by the district judge of anything in the
recommendation and will bar an attack, on appeal, of the factual
findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C);
Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v.
Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The
procedure for challenging the findings and recommendations of
the magistrate judge is set out in more detail in SD ALA LR 72.4
(June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate
judge in a dispositive matter, that is, a matter excepted by 28
U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to
Magistrate Judge's Recommendation" within fourteen days after
being served with a copy of the recommendation, unless a
different time is established by order.  The statement of
objection shall specify those portions of the recommendation to
which objection is made and the basis for the objection.  The
objection party shall submit to the district judge, at the time
of filing the objection, a brief setting forth the party's
arguments that the magistrate judge's recommendation should be
reviewed de novo and a different disposition made.  It is
insufficient to submit only a copy of the original brief
submitted to the magistrate judge, although a copy of the
original brief may be submitted or referred to and incorporated
into the brief in support of the objection.  Failure to submit a
brief in support of the objection may be deemed an abandonment
of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    Transcript (applicable where proceedings tape recorded). Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 5th day of July, 2012.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE